UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EDWARD CABLE

v.  C.A. NO. 09-439 ML

A.T. WALL ET AL.

REPORT AND RECOMMENDATION

On September 18, 2009, plaintiff, Edward Cable, *pro se*, an inmate at the Adult Correctional Institutions (the "ACI") in Cranston, Rhode Island, filed a complaint pursuant to 42 U.S.C. § 1983 ("§ 1983") (the "Complaint") (Docket # 1). Plaintiff was granted leave to proceed *in forma pauperis* in this action (Docket # 3). Accordingly, pursuant to 28 U.S.C. § 1915(e)(2) ("1915(e)(2)"), I have screened the Complaint. As discussed below, having found that certain claims in the Complaint fail to state claims upon which relief may be granted, I have prepared this Report and Recommendation recommending dismissal of the same.

## BACKGROUND

The following background is alleged in the Complaint.

### I. Conditions of Confinement

Plaintiff witnessed multiple ants, roaches, and mice in cells in Maximum and High Security as well as mice in the kitchen. Cmpt., Statement of Claim, ¶ 1. Further, Maximum and High Security are filthy, with dirt on the bars, mold built up on the showers, and paint chipping. *Id.* at ¶ 2. Also, there is dirt and dust in the ventilation system so "inmates get sick just breathin' in the air," and Director Wall, Warden Weeden, and Deputy Warden Auger have failed to have the vents cleaned. *Id.* at ¶ 3. Additionally, the Maximum and High Security housing units lack sprinkler systems and there are no smoke detectors in or around the cells. *Id.* at ¶ 12.

Further, between June 8, 2009 and August 25, 2009, the ventilation system in High Security blew hot air even though the cells were ninety degrees. *Id.* at ¶ 4. Inmates, who were forced to stay in their cells for twenty-three hours a day despite the heat, experienced breathing difficulties and chest problems. *Id.* The conditions were complained about to defendants Captains Headen and Duffy, Deputy Auger, and Lieutenant Sayles, but they did not fix the problem until an inmate passed out. *Id.*

## II. Excessive Force and Failure to Protect

In March 2009, while he was housed in Maximum Security, plaintiff engaged in a fight with another inmate. *Id.* at ¶ 6. While the correctional officers ran to break up the fight, plaintiff and the other inmate split up, got on the ground, and put their hands behind their backs. *Id.* After plaintiff was cuffed behind his back and picked up, Defendant Correctional Officer Leach sprayed pepper spray in plaintiff's face until the can was empty. *Id.*

From January 10, 2005 until February 4, 2005, when plaintiff was a juvenile, he was placed in protective custody at the ACI. *Id.* at ¶ 10. During this time he was forced to go to recreation and take showers in the same area as adult men who were sex offenders and child molesters. *Id.* The men talked dirty to plaintiff and masturbated while watching him shower. *Id.* Plaintiff reported the conduct to defendants Captain Headen and Warden Weeden, but they failed to address the issue. *Id.*

## III. Other Issues: Denial of Religious Books, Recreation, Grievance Forms, Mail Tampering, and Privacy

Finally, plaintiff also complains that: (i) defendants Deputies Auger and Kettle have denied plaintiff religious books (Islamic reading studies) that he had ordered "because my religion is consider [sic] a gang", *id.* at ¶ 5; (ii) while other ACI inmates get recreation seven days a week, High Security inmates get no recreation "during the first 5 days" or on weekends because the High Security correctional officers "dont [sic] want to work," *id.* at ¶ 7; (iii) defendants Lieutenants Alves and Sayles refuse to provide inmates, including plaintiff, with grievance forms to make complaints, *id.* at ¶ 8; (iv) plaintiff witnessed Defendant Correctional Officer Dennett tempering with inmate mail, *id.* at ¶ 9; and (iv) the cameras in the shower area at Maximum Security violate his right to privacy, *id.* at ¶ 11.

## DISCUSSION

## I. Screening Under § 1915(e)(2) and § 1915A

In connection with proceedings *in forma pauperis*, § 1915(e)(2) instructs the Court to dismiss a case at any time if the Court determines that the action, *inter alia,* fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2). Similarly, 28 U.S.C. § 1915A ("§ 1915A") directs courts to screen complaints filed by prisoners against a governmental entity, officer or employee and dismiss the complaint, or any portion thereof, for reasons identical to those set forth in § 1915(e)(2). 28 U.S.C. § 1915A(b).

The legal standard for dismissing a complaint for failure to state a claim pursuant to §

1915(e)(2)(B) and § 1915A is identical to the legal standard used when ruling on a Rule 12(b)(6) motion. *See Pelumi v. Landry*, No. 08-107, 2008 WL 2660968, at *2 (D.R.I., June 30, 2008). In making this determination, the Court must accept plaintiff's allegations as true and construe them in the light most favorable to plaintiff, although the Court need not credit bald assertions or unverifiable conclusions. *Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1949-1950 (2009). Further, the Court must review pleadings of a *pro se* plaintiff liberally. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285 (1976). A claim fails to state a claim for which relief may be granted if the factual allegations fail to "raise [plaintiff's] right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007); *see also Iqbal*, 129 S.Ct. at 1949-1951 (discussing the plausibility requirement); Fed.R.Civ.P. 8(a)(2).

**II.     Legal Standard Under § 1983**

In order to maintain a § 1983 action, the conduct complained of must have (1) been committed by a person acting under color of state law and (2) deprived the plaintiff of a constitutional right or a federal statutory right. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920 (1980). Here, although defendants were acting under state law, plaintiff's claims are reviewed to determine if they allege facts indicating that defendants deprived him of a constitutional or federal statutory right. As discussed below, upon such review, I have determined that the Complaint states two viable claims while the remaining allegations fail to state claims on which relief may be granted.

**III.    Review of Claims**

    **A.     Viable Claims**

        **1.     Eighth Amendment Excessive Force**

To state an Eighth Amendment claim for the use of excessive force, an inmate must demonstrate "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078 (1986)(citations omitted). The primary inquiry in determining whether a prison official used excessive physical force turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6, 112 S.Ct. 995 (1992)(citations omitted). Here, plaintiff alleges that Correctional Officer Leach sprayed him in the face with a can of pepper spray after he was already handcuffed. Accordingly, I find that plaintiff has stated an Eighth Amendment claim for relief at this stage of the proceedings against Defendant Leach.

### 2. Denial of Religious Books

A prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800 (1974). The free exercise of religion is among the rights retained by prisoners, and prisons must provide inmates reasonable opportunities to exercise their religious freedom. *See Cruz v. Beto*, 405 U.S. 319, 322 & n. 2, 292 S.Ct. 1079 (1972). However, a prison regulation that "impinges on inmates' constitutional rights ... is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987). In *Turner*, the Supreme Court established a four-prong analysis to evaluate whether a prison regulation or practice is "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89-91 (instructing courts to examine whether (1) the regulation or practice in question furthers a legitimate governmental interest; (2) alternative means of exercising the constitutional right remain open to prisoners; (3) accommodation of the right will disrupt the prison environment; and (4) an alternative exists which would fully accommodate the prisoners' rights at a *de minimis* cost to valid penological interests).

Here, plaintiff alleges that defendants Auger and Kettle denied him Islamic reading books allegedly because his "religion is consider [sic] a gang." Cmpt. at ¶ 5. Although the defendants may have had reasons related to legitimate penological interests to deny the Islamic reading materials, as defendants have not yet presented such reasons to the Court, I find that plaintiff's allegations state a claim under the First Amendment at this stage of the action. *See Shaheed-Muhammad v. Dipaolo*, 393 F.Supp.2d 80, 104 (D.Mass. 2005)(where prisoner claimed that confiscation of Islamic publication violated his First Amendment rights, court denied summary judgment for defendants, finding defendants' general claim that publication posed a security risk, without specifying why the publication posed a risk, was inadequate to demonstrate that the confiscation was related to legitimate penological interests).

### B. Claims That Fail to State Claims on Which Relief May Be Granted

#### 1. Eighth Amendment Conditions of Confinement Claims

The Eighth Amendment prohibits "cruel and unusual punishments," and "it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970 (1974)(quoting *Helling v. McKinney*, 509 U.S. 25, 31, 113 S.Ct. 2475 (1993)). Prison officials must provide humane conditions of confinement by "ensur[ing] that inmates receive

4

adequate food, clothing, shelter, and medical care." *Id.* (citation omitted). To allege an Eighth Amendment claim, a plaintiff must plead facts which establish both an objective component, that he was forced to endure "extreme deprivations," and a subjective component, that the defendant acted with "deliberate indifference" to such conditions. *See McMillian*, 503 U.S. at 8-9 (1992). With respect to the objective component, "[t]he Constitution ... 'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321 (1991)(quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 & 347, 101S.Ct. 2392 (1981)). With respect to the subjective element, the plaintiff must plead facts indicating that the defendant was aware of and consciously disregarded serious risk of substantial harm to the plaintiff. *See Farmer*, 511 U.S. at 826.

### a. General Lack of Cleanliness

Here, plaintiff alleges several distinct conditions-of-confinement claims. First, his allegations concerning the overall cleanliness of the facility, including claims that (i) there are ants, rodents, and mice, (ii) the facility is filthy, and (iii) the ventilation system is dusty, are not sufficiently serious to satisfy the objective component of the Eighth Amendment test. Plaintiff does not allege that he suffered, or imminently will suffer, any injury as a result of the conditions, and his general allegations that some other inmates get sick from breathing in the air are inadequate to state a claim. *See, e.g., Hunnewell v. Warden, Me. State Prison*, 19 F.3d 7, at *3 (1st Cir. 1994)(complaints that ventilation system blew dust and fibers into plaintiff's cell causing him to have headaches and bloody noses did not allege deprivations sufficiently extreme to establish a cognizable Eighth Amendment claim); *Shrader v. White*, 761 F.2d 975, 983-84 (4th Cir. 1985)(prisoners' allegations including leaking ceilings and a shower area covered in rust, mold, and mildew were constitutionally insignificant); *Oliver v. Powell*, 250 F.Supp.2d 593, 604 (E.D.Va. 2002)(allegations that cell contained roaches, leaky toilets, peeling paint, and writing on the wall did not state a claim under the Eighth Amendment); *Flaherty v. Cunningham*, No. 93-216, 1994 WL 485751, at * 2 (D.N.H. Sept. 2, 1994)(inmates' Eighth Amendment claims regarding poor air quality and absence of fresh fruit fail where inmates did not aver sufficient facts demonstrating present or potential future harm).

### b. Cell Temperatures

Plaintiff's more specific claim that, between June 8, 2009 and August 25, 2009, the ventilation system in High Security blew hot air even though the cells were ninety degrees also

fails to state an actionable claim. Although plaintiff alleges that some inmates were having chest pains and trouble breathing, he does not state that he suffered from these problems during the eleven week period or that the heat posed a substantial risk of serious harm. Additionally, while ninety degree temperatures are uncomfortable, "[t]he Constitution ... "does not mandate comfortable prisons.'" *Wilson*, 501 U.S. at 298; *see also, e.g., Chandler v. Crosby*, 379 F.3d 1278, 1279 (11th Cir. 2004)(cell temperatures in the eighties and nineties did not constitute "extreme deprivations ... required to make out a conditions-of-confinement claim" under the Eighth Amendment); *Raugust v. Ferriter*, No. 07-55, 2008 WL 5436016, at * 5 (D.Mont. June 11, 2008)(plaintiff's allegations that cell temperatures reached 90 degrees with no air movement due to policy prohibiting inmates from having fans in their cells did not describe extreme deprivation necessary to state an Eighth Amendment claim).

Further, plaintiff's allegations that defendants Headen, Duffy, Auger, and Sayles had the ventilation problem fixed after they learned that an inmate had passed out indicate that these defendants did not consciously disregard a serious risk of substantial harm to the plaintiff.

### c. Fire Safety

"There is no question that fire safety is a legitimate concern under the Eighth Amendment[, and] [p]ersons involuntarily confined by the state have a constitutional right to safe conditions of confinement." *Santana v. Collazo*, 714 F.2d 1172, 1183 (1st Cir. 1983)(citations omitted). Further, a "remedy for unsafe conditions need not await a tragic event." *Helling*, 509 U.S. at 33; *Dimarzo v. Cahill*, 575 F.2d 15, 18 (1st Cir. 1978)("One need not wait for the conflagration before concluding that a real and present threat exists"). However, "not every deviation from ideally safe conditions constitutes a violation of the constitution." *Santana*, 714 F.2d at 1183.

Here, although plaintiff states that Maximum and High Security housing units do not have sprinkler systems or smoke detectors in or around inmate cells, he does not address numerous factors affecting fire safety at the prison. He fails to state that the prison lacks a comprehensive fire safety plan or address other factors such as fire extinguishers; smoke detectors in the cell corridors, stairwells and elevator landings; the fire alarm system, evacuation plans, and fire drills; locking devices on cell doors; the prison's combustible load; fire walls; or smoke containment capabilities in the ventilation systems. *See, e.g., Hadix v. Johnson*, 367 F.3d 513, 528-29 (6th Cir. 2004)(reviewing cases dealing with prison fire safety); *Sowell v. Fair*, 915

6

F.2d 1557, *5 (1st Cir. 1990)(prisoner's claim regarding inoperative smoke detectors failed to state an Eighth Amendment claim). Plaintiff also does not suggest that the prison is in violation of the Rhode Island fire safety code, and, although fire safety codes do not set the constitutional minima, they do provide an indication of society's standard of decency. *See Masonoff v. DuBois*, 899 F.Supp. 782, 799 (D.Mass. 1995). Further, with respect to the subjective element, plaintiff fails to state against whom he brings his claim regarding fire safety or that such party or parties acted with deliberate indifference.

#### d. Conclusion

Accordingly, plaintiff's claims regarding the conditions of confinement fail to state claims on which relief may be granted and should be dismissed. I so recommend.

### 2. Failure to Protect

Plaintiff also alleges that, between January 10, 2005 and February 4, 2005, when he "was a juvenile," defendants Captain Headen and Warden Weeden violated the Eighth Amendment by not adequately protecting plaintiff from (i) taking recreation and showers in the same area as adult men who were sex offenders and child molesters or (ii) adult male inmates talking dirty to plaintiff and masturbating while watching him shower. An inmate may state a claim against a prison official under the Eighth Amendment for the failure to afford adequate protection from attack by another inmate if the plaintiff demonstrates that (1) the deprivation he suffered was objectively serious and (2) the defendant official knew of and disregarded a substantial risk of serious harm to the plaintiff. *See Farmer*, 511 U.S. at 828-840. Further, "because the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (citations omitted).

Here, although plaintiff's experience of having inmates talk dirty to him and masturbate while watching him must have been unpleasant, such experience does not amount to the serious deprivation required to rise to an Eighth Amendment claim. *See, e.g., Lapomarda v. Skibinski*, No. 09-377, 2009 WL 4884500, at *2 (D.Me. Dec. 10, 2009)(dismissing for failure to state a claim prisoner's allegation that correctional officer sexually harassed him, by staring at, and talking dirty to, him as prisoner showered); *Collins v. Graham*, 377 F.Supp.2d 241, 243-44 (D.Me. 2005)(verbal sexual harassment of prisoner failed to state a viable claim). Plaintiff

describes neither physical nor psychological pain as a result of the alleged harassment by his fellow inmates. Therefore, as the harassment plaintiff describes does not qualify as objectively serious under the Eighth Amendment, plaintiff's claims that defendants Headen and Weeden failed to protect him against such harm do not state cognizable claims and should be dismissed. I so recommend.

### 3. Recreation, Grievance Forms, Mail Tampering, and Privacy

Plaintiff also complains that: (i) while other ACI inmates get recreation seven days a week, High Security inmates get no recreation "during the first 5 days" or on weekends, *id.* at ¶ 7; (ii) defendants Lieutenants Alves and Sayles refuse to provide inmates, including plaintiff, with grievance forms to "make complaints on stuff and other issues," *id.* at ¶ 8; (iii) plaintiff witnessed defendant Correctional Officer Dennett tempering with inmate mail, *id.* at ¶ 9; and (iv) the cameras in the shower area at maximum security violate his right to privacy, *id.* at ¶ 11.

#### a. Recreation

By alleging that other ACI inmates get more recreation than inmates housed in High Security, plaintiff attempts to state a Fourteenth Amendment Equal Protection claim. "The essence of the Equal Protection Clause is that government should treat similarly situated persons alike." *Street v. Maloney*, 991 F.2d 786, at *4 (1st Cir. 1993). If, as here, the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249 (1985)(citations omitted). In the prison context, to establish an Equal Protection Clause claim not based on a suspect classification, inmates must demonstrate that their differential treatment was arbitrary and capricious rather than based on a rational relationship to a legitimate state goal. *See Nadeau v. Helgemoe*, 561 F.2d 411, 416 (1st Cir. 1977)("The state's power to draw distinctions between [protective custody] prisoners and the general population ... is always subject to the constitutional requirement that the distinction be rational rather than arbitrary and capricious").

Here, plaintiff's Equal Protection claim fails to state a claim on which relief may be granted. First, plaintiff fails to identify any particular defendant responsible for the alleged reduced recreation time. Second, the Complaint fails to sufficiently allege that the reduced recreation time was arbitrary and capricious. Although defendants have not introduced evidence

8

at this stage of the proceeding, it is patently obvious that there are legitimate penological reasons for High Security inmates to receive less outdoor recreation time than inmates in lower security units. *See Parks v. Town of Hampton Falls, N.H.*, No. 07-173, 2007 WL 3101358, at * 5 (D.N.H. Oct. 17, 2007)(prisoner's allegations that affording pretrial detainees housed in the punitive unit less out-of-cell and recreation time than inmates in the general prison population failed to state a claim where there were no allegations that the difference in treatment was not based on a legitimate penological concern). Plaintiff's bald assertion that the reduced recreation time resulted because "officers dont [sic] want to work" does not provide an adequate foundation to find that the difference in treatment was not based on legitimate penological reasons, and therefore does not raise plaintiff's right to relief on this claim above the speculative level. Accordingly, plaintiff's claim regarding disparate recreation time should be dismissed. I so recommend.

### b.     Denial of Grievance Forms

Plaintiff's claim that defendants Lieutenants Alves and Sayles denied him and other inmates grievance forms also fails to state a claim on which relief may be granted. Although prisoners have a constitutional right under the First and Fourteenth Amendments to access to the courts, *see Lewis v. Casey*, 518 U.S. 343, 346, 116 S.Ct. 2174 (1996), plaintiff does not have a constitutional right to access to grievance forms, *see Smith v. Shivers*, No. 09-1027, 2009 WL 3379925, at * 2 (W.D.La. Oct. 16, 2009)(reviewing cases); *Mitchell v. Liberty*, No. 08-341, 2009 WL 33435, at * 5 (D.Me. Jan. 05, 2009). Here, plaintiff does not claim that the denial of grievance forms impeded his access to the courts. Accordingly, I recommend that plaintiff's claim regarding denial of grievance forms be dismissed.

### c.     Mail Tampering

With respect to plaintiff's allegations that defendant Officer Dennett tampered with inmates' mail in violation of the First and Fourteenth Amendments, plaintiff fails to claim that Dennett tampered with any of plaintiff's mail or that he was harmed in any way from Dennet's alleged actions. Accordingly, such allegations fail to state a viable claim. *See Jutras v. Graham*, No. 09-151, 2009 WL 1744588, at * 5 (D.N.H. June 19, 2009)(prisoner's claim regarding mail tampering failed to state a claim because, in part, "he has not indicated that he was harmed in any way by the actions alleged"). Accordingly, plaintiff's claim regarding mail tampering should be dismissed. I so recommend.

### d. Privacy in the Showers

Finally, plaintiff's invasion of privacy claim based on cameras in the showers also fails. First, plaintiff does not name a defendant with respect to this claim. Second, cameras in the showers of Maximum Security do not constitute unreasonable searches in violation of plaintiff's privacy rights. Although prisoners have no right to privacy with respect to cell searches, *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194 (1984), they do have a limited right to privacy of their person under the Fourth Amendment, *Bell v. Wolfish*, 441 U.S. 520, 558, 99 S.Ct. 1861 (1979); *Allison v. GEO Group, Inc.*, 611 F.Supp.2d 433, 442-63 (E.D.Pa. 2009)(discussing prisoners' privacy rights). However, the Fourth Amendment prohibits only "unreasonable searches," and considerable deference is given to prison concerns, such as safety and security, in determining if searches are reasonable. *Wolfish*, 441 U.S. at 558-559 (routine body cavity inspections after prisoner contact visits did not violate prisoners' constitutional rights because the need to check for contraband reasonably outweighed prisoners' privacy interests); *see also Roberts v. Rhode Island*, 239 F.3d 107, 110 (1st Cir. 2001).

Courts have denied claims that cameras in prison showers, which "are less intrusive than the body-cavity inspections *Wolfish* held permissible," constitute unreasonable searches. *Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995)("After *Wolfish* and *Hudson* monitoring of naked prisoners is not only permissible - wardens are entitled to take precautions against drugs and weapons ... but also sometimes mandatory.... Vigilance over showers, vigilance over cells - vigilance everywhere, which means that guards gaze upon naked inmates"); *see also, e.g., Sweet v. Magarian*, 52 Fed.Appx. 419 (9th Cir. 2002)(prisoner's claim that his privacy rights were violated by cameras in the prison showers failed to state a cognizable claim where prisoner did not allege facts indicating that the surveillance was excessive, harassing or otherwise unrelated to legitimate penological interests); *Burge v. Murtaugh*, No. 07-336, 2007 WL 4335461, at *2 (N.D.Ind. Dec. 07, 2007)(prisoner's claim that he was not allowed personal privacy when using the toilet or showers fails to state a viable claim). Plaintiff does not complain that the cameras are placed in the showers for non-penological reasons, such as to harass him, or are otherwise unreasonable. Accordingly, plaintiff's complaints regarding cameras in the showers should be dismissed. I so recommend.

## CONCLUSION

In summary, I find that the Complaint states the following claims against the following defendants:

(1) Eighth Amendment excessive force claims against Officer Leach; and

(2) First Amendment claims regarding denial of access to religious publications against Deputies Auger and Kettle.

However, I find that the following claims fail to state claims on which relief may be granted and recommend that such claims be dismissed:

(i) Eighth Amendment conditions-of-confinement claims;

(ii) Eighth Amendment failure to protect claims;

(iii) Fourteenth Amendment Equal Protection Clause claims regarding recreation;

(iv) First and Fourteenth Amendment claims regarding denial of grievance forms;

(v) First and Fourteenth Amendment claims regarding mail tampering; and

(vi) Fourth Amendment invasion of privacy claims.

Accordingly, I further recommend that all defendants, except Officer Leach and Deputies Auger and Kettle, be dismissed as defendants in this action.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Fed R. Civ. P. 72(b); LR Cv 72(d). Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986) (per curiam); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir. 1980).

_____
Jacob Hagopian
Senior United States Magistrate Judge
March 18, 2010